**Not for Publication**

UNITED STATES DISTRICT COURT<br/>DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREGORY SHERRILL,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HOBOKEN, *et al.*,<br><br>Defendants. | Civil Action No. 16-3092 (ES) (MAH)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is defendants City of Hoboken ("Hoboken"), Mayor Dawn Zimmer, John Morgan, Hector Mojica, Tia Bryant, Mellissa Longo, Jon Tooke, Michael Korman, Quentin Wiest, Kimberley Wilson, Nita Raval, and Alysia Walsh (Proko) (collectively, "Defendants") motion to dismiss plaintiff Gregory Sherrill's ("Plaintiff") Sixth Amended Complaint (D.E. No. 101 ("SAC"). (D.E. No. 105). The Court has considered the relevant submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court dismisses Plaintiff's federal claims and remands any remaining state law claim to the Superior Court of New Jersey, Law Division, Hudson County.

**I.      Background**

Plaintiff was employed by defendant Hoboken as a Parking Enforcement Officer from February 1, 2011 until his alleged wrongful termination on April 30, 2014. (SAC ¶ 22). He alleges that during all relevant times, Hoboken had a written "Affirmative Action/Anti-Harassment Policy." (*Id.* ¶ 24). Under the policy, employees can file an affirmative action complaint with the Affirmative Action Officer, who must then notify the Affirmative Action Panel. (*Id.* ¶ 32). At all

relevant times, Kimberley Wilson was the Affirmative Action Officer and the Affirmative Action Panel consisted of Business Administrator Quentin Wiest, Corporation Counsel Mellissa Longo, and Director of Transportation and Parking John Morgan. (*Id.* ¶¶ 12 & 72–73).

Plaintiff alleges that Morgan required him "to undergo a drug test after [Plaintiff] was involved in a minor fender bender for which [P]laintiff was not at fault." (*Id.* ¶ 54). Thereafter, on April 1, 2014, Plaintiff filed a written affirmative action complaint with Wilson "stating his belief that defendant John Morgan was targeting him because [P]laintiff is African American." (*Id.* ¶¶ 56 & 69). The SAC provides no additional factual allegations about this incident. (*See generally id.*).

Plaintiff also alleges that on April 10, 2014, his co-worker, Tia Bryant, harassed him. Particularly, Bryant called Plaintiff a "faggot" and made other disparaging remarks about his sexual orientation by "chirping" on their Nextel work phones. (*Id.* ¶¶ 74–75). That same day, Plaintiff notified his supervisor, Hector Mojica, requesting prompt action to stop Bryant's harassment. (*Id.* ¶ 77). Mojica responded that he would take the action requested. (*Id.* ¶ 78). Shortly thereafter, however, Bryant called Plaintiff and threatened Plaintiff with physical violence for reporting the incident to Mojica. (*Id.* ¶ 79). Bryant continued to harass Plaintiff, again calling Plaintiff a "faggot" and telling Plaintiff he will die of AIDS. (*Id.*). Plaintiff again notified Mojica, asking that Mojica immediately intervene to stop Bryant's conduct, but Mojica allegedly failed to intervene. (*Id.* ¶¶ 80–82). Plaintiff then told Mojica that he was going to report the harassment, as well as the failure of Mojica to take prompt and appropriate remedial action, to Hoboken's Affirmative Action Officer, Wilson. (*Id.* ¶ 83).

Later that same day, Plaintiff encountered Mojica and Morgan at City Hall as he was going to file an affirmative action complaint with Wilson. (*Id.* ¶¶ 85–86). Mojica asked Plaintiff "in a

threatening manner what he was doing in City Hall," and Plaintiff explained that he was there to report Bryant's harassment and Mojica's failure to intervene. (*Id.* ¶¶ 86–87). Thereafter, Plaintiff reported Bryant's harassment and Mojica's failure to intervene to Wilson, who requested that that Plaintiff put the complaint in writing. (*Id.* ¶¶ 89 & 92). Plaintiff's written complaint, dated April 11, 2014, was assigned complaint number AA-004-2014 and was signed by Wilson on April 24, 2014.[1] (*Id.* ¶¶ 93 & 101).

Sometime later, Mojica telephoned Plaintiff to inform him that a woman had claimed that Plaintiff had struck her hand with one of Hoboken's Cushman vehicles while she was getting into a taxicab. (*Id.* ¶ 90). Plaintiff informed Mojica that no such incident had occurred. (*Id.* ¶ 91). On April 16, 2014, however, Plaintiff received a Preliminary Notice of Disciplinary Action, charging that on April 10, 2014, Plaintiff struck a pedestrian's hand while operating a Hoboken Cushman vehicle. (*Id.* ¶ 96).

On April 25, 2014, a disciplinary hearing was held, which was presided by Public Safety Director Jon Tooke. (*Id.* ¶ 110). During the hearing, Plaintiff was represented by a union representative. (*See id.* ¶ 176d.). Tooke heard evidence, and at the conclusion of the hearing announced he was going to reconvene the hearing for a second day. (*Id.* ¶¶ 112 & 242). However, "Alysia Walsh (Proko) and/or Mellissa Longo falsely stated to defendant Jon Tooke that [P]laintiff no longer wished to convene the hearing for a second day and did not wish for defendant Jon Tooke to review the additional evidence he requested at the close of the first day of the hearing." (*Id.* ¶¶ 113–14). As a result, Tooke closed the hearing and issued a decision recommending Plaintiff's termination. (*Id.* ¶ 246).

---

[1]     The SAC indicates that Wilson signed the affirmative action complaint in 2016, but this appears to be a typographical error. (*See* SAC ¶¶ 103 & 116).

On April 30, 2014, Wiest, as the appointing authority for Hoboken,[2] terminated Plaintiff relying on Tooke's recommendations and findings. (*Id.* ¶¶ 120, 273, 278 & 283–85). On May 1, 2014, Plaintiff was personally served with the notice of termination, which stated he was terminated due to his conduct on April 10, 2014. (*Id.* ¶ 120).

Plaintiff also alleges that he received a second Preliminary Notice of Disciplinary Action after the April 25, 2014 hearing. (*Id.* ¶ 116). This new notice charged that, on April 10, 2014, at 8:15 a.m., Plaintiff engaged in a verbal altercation with Bryant. (*Id.*). Plaintiff was given a hearing date of May 9, 2014. (*Id.* ¶ 117). Since Plaintiff was terminated, however, the May 9, 2014 hearing on the second charge never took place. (*Id.* ¶ 122).

Thereafter, Plaintiff applied for unemployment benefits, but Personnel Director Michael Korma denied the application. (*Id.* ¶¶ 123–25). Plaintiff appealed the decision and his unemployment benefits were subsequently approved. (*Id.* ¶¶ 126–27). Plaintiff also sought to withdraw his state pension contributions with the New Jersey Public Employees' Retirement System, but Longo allegedly refused to authorize the release of Plaintiff's contributions. (*Id.* ¶¶ 128–29). Plaintiff's contributions were eventually released in November of 2014. (*See id.* ¶ 359).

Plaintiff initiated this action in the Superior Court of New Jersey, Law Division, Hudson County, and subsequently Defendants removed the action. (D.E. No. 1). Plaintiff had various opportunities to amend his complaint (*see, e.g.*, D.E. Nos. 26–27, 51, 62 & 97), including after the Court spent over two hours with the parties clarifying the different federal claims and their respective pleading requirements. (*See* D.E. Nos. 50 & 61). The SAC raises 13 Counts: Plaintiff asserts Constitutional violations under 42 U.S.C. § 1983 (Counts Six to Ten); Civil Conspiracy pursuant to 42 U.S.C. § 1985 (Count Eleven); as well as state law claims under the New Jersey

---

[2] "'Appointing authority' means a person or group of persons having power of appointment or removal." N.J. Admin. Code § 4A:1-1.3.

Law Against Discrimination, N.J. Stat. Ann. § 10:5-1, *et seq.* ("NJLAD") (Counts One to Four and Thirteen); the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1, *et seq.* ("NJCRA") (Count Five); and breach of the covenant of good faith and fair dealing (Count Twelve).

## II.     Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson,* 969 F.2d 1454, 1462 (3d Cir. 1992). But the Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Finally, in deciding a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

**III.   Discussion**

**A.     Section 1983 Claims: Counts Six to Ten**

To establish a claim under Section 1983, Plaintiff must establish that a person (i) acting under color of state law; (ii) deprived him of a federal right.  42 U.S.C. § 1983; *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000).  Plaintiff asserts claims for violation of his procedural due process rights (Count Six), substantive due process (Count Seven), and equal protection (Count Eight).  Plaintiff also asserts claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against Hoboken for these alleged constitutional violations (Counts Nine and Ten).  As the Court explains below, the SAC fails to properly plead any of these claims.

**1.     Count Six – Procedural Due Process.**

Count Six of Plaintiff's SAC asserts a Fourteenth Amendment procedural due process claim against Hoboken, Dawn Zimmer, John Morgan, Hector Mojica, Mellissa Longo, Quentin Wiest, Alysia Walsh (Proko), and Kimberley Wilson.  (SAC ¶¶ 265–86).

The Fourteenth Amendment prohibits deprivations "of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1; *Solomon v. Phila. Hous. Auth.*, 143 F. App'x 447, 451 (3d Cir. 2005).  When analyzing a Section 1983 claim alleging a state actor's failure to accord appropriate levels of procedural due process, the Court's inquiry is bifurcated.  The Court must first determine whether the asserted interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property.  *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011).  And, if so, the Court then asks whether the procedures available provided the plaintiff with adequate due process.  *Id.*

"To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; he must have a legitimate entitlement to it."  *Chabal v. Reagan*, 841

F.2d 1216, 1223 (3d Cir. 1988). "[A]n at-will employee does not have a legitimate entitlement to continued employment." *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005). However, an entitlement can be created expressly by state statute or regulation, or by implied contract. *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir. 1993). In either case, the state law determines whether such a property interest exists. *Bishop v. Wood*, 426 U.S. 341, 344 (1976).

In New Jersey, employment is presumptively at-will, and an employer may terminate an "employee for good reason, bad reason, or no reason at all." *Witkowski v. Thomas J. Lipton, Inc.*, 643 A.2d 546, 552 (N.J. 1994). Thus, as the Court's prior Opinion explained, to override the presumption of at-will employment Plaintiff must show "an agreement to the contrary." (*See* D.E. No. 99 at 8). That is, Plaintiff must allege facts showing a mutual understanding with his employer that Plaintiff's employment was not at-will, or that his employment falls within a particular state regulation that grants his employment tenure.

Despite having multiple opportunities to amend this claim, Plaintiff still fails to allege sufficient *facts* that would create the inference that he has a legitimate entitlement to his job. Plaintiff's SAC asserts that he "was not an at-will employee" because he "was hired by defendant . . . Hoboken as a Parking Enforcement Officer and was a permanent employee in the civil service." (SAC ¶¶ 266 & 268). Plaintiff further asserts that he "had a legitimate claim of entitlement to the job because he successfully completed his working test period and, pursuant to state regulations, he was entitled to continued employment unless disciplinary charges be brought and the employer established good and sufficient cause for his removal cause after the employee is afforded notice and a full and fair opportunity to be heard as to the charges." (*Id.* ¶ 270). Plaintiff goes on to state that "[p]ursuant to Civil Service regulations of the State of New Jersey, an employee like plaintiff must be served with a Preliminary Notice of Disciplinary Action setting forth the charges and

statement of facts supporting the charges (specifications), and afforded the opportunity for a hearing prior to imposition of major discipline." (*Id.* ¶ 271). He also asserts that he "was not unfit for duty or a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services, or formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job." (*Id.* ¶ 272).

A close examination of these allegations reveals that they are nothing more than simple legal conclusions and recitations of New Jersey's Civil Service Administrative Code. *See, e.g.*, N.J. Admin. Code § 4A:1-1.3 (defining permanent employee as "an employee in the career service who has acquired the tenure and rights resulting from regular appointment and successful completion of the working test period"); *see also* § 4A:2-2.5(a) (stating that a covered employee must be "served with a Preliminary Notice of Disciplinary Action setting forth the charges and statement of facts supporting the charges (specifications), and afforded the opportunity for a hearing prior to imposition of major discipline," except that an employee may be suspended immediately and without a hearing when 1) "it is determined that the employee is unfit for duty or is a hazard to any person if permitted to remain on the job, or that an immediate suspension is necessary to maintain safety, health, order or effective direction of public services" or 2) "the employee is formally charged with a crime of the first, second or third degree, or a crime of the fourth degree on the job or directly related to the job").

Missing from the SAC are the *factual* allegations necessary to allow the Court to draw the reasonable inference that Plaintiff's employment relationship, in fact, meets the recited regulatory language. It is well established that unadorned legal conclusions and threadbare recitals of the relevant statutory language fail to meet the pleading requirements of Rule 8. *See Iqbal*, 556 U.S.

at 678.

Equally deficient is Plaintiff's assertion that he "was a union member and party to a collective bargaining agreement." (SAC ¶ 267). Plaintiff provides no facts or details about the asserted collective bargaining agreement, nor does he provide any explanation as to how this assertion means he has a legitimate entitlement to remaining at his job. (*See generally id.*; D.E. No. 114 at 32–34). Indeed, Plaintiff does not even allege that the collective bargaining agreement contained a provision stating that Plaintiff could only be discharged for cause. The mere fact that Plaintiff was a union member and party to a collective bargaining agreement does not, by itself, mean that he has a legitimate entitlement to remaining at his job. *See, e.g.*, *Felker v. Twp.*, No. 16-1907, 2018 WL 585606, at *10 (M.D. Pa. Jan. 29, 2018) ("[I]t is the precise terms of a collective bargaining agreement that can confer a property interest, not the agreement's mere existence alone.") (citation omitted). Therefore, this assertion is also insufficient to show the existence of an agreement creating a protected property right.

Plaintiff's brief adds nothing of substance, merely asserting that "defendants could only terminate [P]laintiff for just cause." (D.E. No. 114 at 33). In short, "Plaintiff has not alleged any facts that would overcome the presumption of at-will employment and thus fails to plead adequately a protected property interest in his job sufficient to trigger due process concerns." (D.E. No. 99 at 8 (citing *Morton v. Arnold*, 618 F. App'x 136, 141 (3d Cir. 2015)). Accordingly, on this ground alone, Plaintiff fails to plead a procedural due process claim.

Moreover, even if Plaintiff could show a property interest, his claim still fails to allege that the procedures available to him did not provide due process of law. Plaintiff does not allege that the procedures set out by Sections 4A:2-2.5 and 4A:2-2.6, which were available to him, are inadequate. Nor could he, since these provisions are "designed to give the employee a fair and

efficient opportunity to change the employer's mind about the appropriateness of the disciplinary action." *In re Stoecker*, No. A-3270-09T1, 2012 WL 652588, at *7 (N.J. Super. Ct. App. Div. Mar. 1, 2012). In fact, Plaintiff admits that he was served with the required Preliminary Notice of Disciplinary Action detailing the charge; he requested and was granted a hearing; he was represented at that hearing by a union representative; and within 20 days of the hearing the appointing authority made a decision on the charges and furnished Plaintiff with a Final Notice of Disciplinary Action via personal service. (*See, e.g.*, SAC ¶¶ 120, 273, 274, 278, 279 & 283); *see also* N.J. Admin. Code §§ 4A:2-2.5(a) & 4A:2-2.6.

Rather, the core of Plaintiff's claim is that the hearing officer, Jon Tooke, was not impartial and had *ex parte* communications with "Alysia Walsh (Proko) and/or Mellissa Longo," who work for Hoboken's Corporation Counsel's Office. (*See, e.g.*, *id.* ¶¶ 241, 245 & 285). In turn, the *ex parte* communications allegedly caused Tooke to declare the hearing closed after only one day, and to then find Plaintiff guilty of the disciplinary charges. (*Id.* ¶¶ 278 & 281–84). In other words, Plaintiff's procedural due process claim is that the hearing was biased and a sham due to the actions taken by defendants Tooke, Walsh, and Longo.

However, "the focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the individual of his liberty or property interest." *Giuliani v. Springfield Twp.*, 726 F. App'x 118, 122 (3d Cir. 2018) (internal quotation marks omitted). And further, "[a] due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) (quoting *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)). Therefore, "in order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are

unavailable or patently inadequate." *Id.* So long as "there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." *Id.*; *see also McDaniels v. Flick*, 59 F.3d 446, 460 (3d Cir. 1995). This is true even when the plaintiff contends that one part of the process afforded to him was biased or a sham, so long as there were avenues of review available to him. *See Alvin*, 227 F.3d at 119; *McDaniels*, 59 F.3d at 460.

Here, the Civil Service regulations undoubtably provided Plaintiff with multiple processes that clearly appear to afford due process protections. For instance, Section 4A:2-2.5(e) provides employees with the right to file a petition for interim relief and to appeal any violation of the of the opportunity for a hearing provision. The interim relief petition allows the employee to obtain a stay of the disciplinary decision pending a final decision from the Commission. N.J. Admin. Code § 4A:2-1.2(a). Additionally, Sections 4A:2-2.8 to 10 set out the procedures for filing an appeal to the Civil Service Commission from a Final Disciplinary Action. These provisions entitle covered employees who receive major discipline (like termination) to a hearing before the Commission or an administrative law judge, N.J. Admin. Code § 4A:2-2.9(b), and require the Commission to reinstate the employee and award back pay when the disciplinary penalty is reversed, *id.* § 4A:2-2.10(a). Finally, if at that point the employee is still dissatisfied with the decision, he may file an appeal to the Appellate Division as of right. *See Hood v. Ryan*, 2008 WL 1820600, at *13 (N.J. Super. Ct. App. Div., April 24, 2008) (citing N.J.R. 2:2-3(a)(2)).

Plaintiff does not allege that he attempted to invoke these procedures or that they were unavailable or patently inadequate. (*See generally* SAC). Accordingly, Plaintiff "cannot claim in federal court that he has been denied due process because his pre-termination hearing was held by a biased individual, where he has not taken advantage of his right to a post-deprivation hearing

before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker." *McDaniels*, 59 F.3d at 460; *see also Reilly v. City of Atl. City*, 532 F.3d 216, 236 (3d Cir. 2008) ("Reilly did not attempt to invoke any of the post-deprivation procedures available to him, nor does he contest their adequacy. Therefore, he cannot state a valid procedural due process claim as a matter of law.").

Because Plaintiff fails to provide a sufficient factual basis for his due process claim despite having the benefit of discovery and despite having multiple opportunities to do so, allowing further leave to amend would be futile. Therefore, the Court dismisses this claim *with prejudice*.

### 2. Count Seven – Substantive Due Process

Count Seven asserts a Section 1983 substantive due process claim against all Defendants. (SAC ¶¶ 287–96). "To establish a substantive due process claim under Section 1983, the plaintiff must prove (1) the particular interest at issue is protected by the Fourteenth Amendment, and (2) the government's deprivation of that protected interest shocks the conscience." *Connection Training Servs. v. City of Phila.*, 358 F. App'x 315, 319 (3d Cir. 2009). When a plaintiff challenges a non-legislative state action (such as an adverse employment decision), the court "must look, as a threshold matter, to whether the property interest being deprived is 'fundamental' under the Constitution." *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 139–42 (3d Cir. 2000). If the asserted right is not fundamental, "there is no substantive due process issue and the state conduct will be upheld so long as the state complies with procedural due process." *Connection Training Servs.*, 358 F. App'x at 319. Importantly, "the Third Circuit has held that tenured public employment is not a fundamental interest under the Constitution, and thus a terminated public employee cannot invoke substantive due process principles to challenge that action." *Holley v. Port Auth.*, No. 14-7534, 2017 WL 4082825, at *13 (D.N.J. Sept. 15, 2017)

(collecting cases).

Here, Plaintiff asserts that Defendants violated his substantive due process right to "not [ ] be terminated because 1) he is African American; 2) because he is gay and/or 3) because he complained of discrimination." (SAC ¶ 288). In effect, then, Plaintiff seeks to improperly invoke substantive due process principles to challenge his termination. *See Holley*, 2017 WL 4082825, at *13; *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 n.12 (3d Cir. 2006). Consequently, his claim necessarily fails.

Moreover, at the core of Plaintiff's claim is a vindication of his right to be treated equally under the law. But "claims governed by explicit constitutional text may not be grounded in substantive due process." *Torres v. McLaughlin*, 163 F.3d 169, 172 (3d Cir. 1998). Accordingly, "when a particular clause or amendment of the Constitution 'provides an explicit textual source of constitutional protection against a particular sort of government behavior,' it is that clause or amendment and 'not the more generalized notion of substantive due process' which governs claims arising out of such behavior." *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 441 n.20 (D.N.J. 2003) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Similar to the case at bar, in *Hargrave* the plaintiff alleged racial and sexual harassment in public employment in violation of the equal protection clause and his substantive due process rights. *See id.* at 442. The court dismissed the plaintiff's substantive due process claim "because the rights and interests which plaintiff [sought] to vindicate already find protection in the specific guarantees of the Fourteenth Amendment's Equal Protection Clause." *Id.* at 441 n.20. Plaintiff's substantive due process claim here must be dismissed for the same reason, since the employment rights and interests he seeks to vindicate already find protection in the specific guarantees of the Fourteenth Amendment's Equal Protection Clause. *See id.* And because Plaintiff has failed to

allege a proper claim despite having multiple opportunities to do so, the Court dismisses Count seven *with prejudice*.

### 3. Count Eight – Equal Protection

Count Eight asserts that Hoboken, Dawn Zimmer, John Morgan, Hector Mojica, Melissa Longo, Jon Tooke, and Quentin Wiest violated Plaintiff's right to equal protection of the laws. (SAC ¶¶ 297–313). To state a Section 1983 equal protection claim in the public employment context, a plaintiff must demonstrate purposeful discrimination by showing that he received different treatment than other similarly situated persons and that the disparate treatment was based on his protected class status. *See Kasper v. Cnty. of Bucks*, 514 F. App'x 210, 214 (3d Cir. 2013). To survive a motion to dismiss, the complaint must make "plausible the conclusion that [similarly situated] parties exist and that they are like [the plaintiff] in all relevant aspects." *Vurimindi v. City of Phila.*, 521 F. App'x 62, 66 (3d Cir. 2013). That is, the plaintiff must provide specific allegations identifying similarly situated parties and instances in which they were or were not treated different from the plaintiff. *See id.*; *Kasper*, 514 F. App'x at 214–15.

Here, Plaintiff asserts that he is African American and gay. (SAC ¶ 297). Placing aside that sexual orientation has not been recognized as a protected class under federal law, *Bower v. Cannon*, No. 17-10905, 2018 WL 6441034, at *3 (D.N.J. Dec. 7, 2018), the SAC simply fails to demonstrate that Plaintiff was treated differently from similarly situated individuals. Particularly, nowhere in Plaintiff's 74-page complaint does he provide specific allegations describing similarly situated individuals or illustrating instances where such individuals were treated differently than Plaintiff. (*See generally* SAC). For instance, Plaintiff does not offer any allegations where a non-African American or non-gay parking enforcement officer was disciplined differently for similar conduct. Instead, Plaintiff simply offers unadorned and conclusory allegations.

For example, Plaintiff asserts that "only employees of [P]laintiff's race were drug tested to [P]laintiff's knowledge" (*id.* ¶ 302); that non-African American and non-gay employees engaging in conduct similar to Plaintiff's were not terminated (*id.* ¶ 304); and that Morgan "had never required non-minority employees to undergo drug testing for involvement in minor accidents" (*id.* ¶ 310). Plaintiff's opposition brief adds nothing of value, simply paraphrasing the same deficient allegations from the Sixth Amended Complaint. (D.E. No. 114 at 34 (quoting SAC ¶¶ 54, 55, 301 & 309–13)). These blanket, non-specific allegations are insufficient to make plausible the conclusion that similarly situated parties exist and that Plaintiff was treated differently from them because of his race or sexual orientation. *See, e.g.*, *Vurimindi*, 521 F. App'x at 66; *Kasper*, 514 F. App'x at 215; *Santos v. Sec'y of D.H.S.*, 532 F. App'x 29, 34 (3d Cir. 2013).

This deficiency is fatal to Plaintiff's equal protection claim. *See Slavoski v. Pawlowski*, 462 F. App'x 215, 218 (3d Cir. 2012). Accordingly, Count Eight is dismissed *with prejudice*.

### 4. Counts Nine and Ten – *Monell* Liability

Counts Nine and Ten of the SAC assert *Monell* claims against Hoboken. (SAC at 60 & 65). Particularly, Plaintiff asserts that Hoboken's allegedly unconstitutional custom, practice, and policy, as well as Hoboken's failure to train its employees, caused the violation of Plaintiff's rights to procedural due process, substantive due process, and equal protection. (SAC ¶¶ 314–55). Because the Court finds that the SAC does not allege any underlying constitutional violation, Plaintiff's *Monell* claims must also fail. *See Startzell v. City of Phila.*, 533 F.3d 183, 204 (3d Cir. 2008). Accordingly, the Court dismisses Counts Nine and Ten on this ground alone.

Moreover, Plaintiff's *Monell* claims also fail because Plaintiff has not plead a factual basis for finding that Hoboken has either an unconstitutional custom, practice, or policy; or acted with deliberate indifference by failing to train or supervise its employees.

In Count Nine, Plaintiff claims that although "Hoboken has a written Affirmative Action/Anti Harassment Policy . . ., its actual custom, practice and/or policy is to tolerate discrimination, harassment and retaliation and to punish those who complain about such unlawful conduct." (SAC ¶ 315; *see also* D.E. No. 114 at 37).

A local government may be sued under Section 1983 only for acts implementing an official policy, practice or custom. *Monell*, 436 U.S. at 690–91. *Monell* provides that a municipality cannot be held liable under Section 1983 on a respondeat superior theory. *Id.* at 691, 694. Rather, "liability . . . must be founded upon evidence that the government unit itself supported a violation of constitutional rights." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). In sum, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [Section] 1983." *Monell*, 436 U.S. at 694.

A plaintiff may show custom for *Monell* purposes through a given course of conduct, "although not specifically endorsed or authorized by law," that is so well-settled and permanent as to virtually constitute law. *Bielevicz*, 915 F.2d at 850. To plausibly plead *Monell* liability, a plaintiff must identify the challenged policy or custom, attribute it to the municipality itself, and show a causal link between execution of the policy and the injury suffered. *Harley v. City of Jersey City*, No. 16-5135, 2017 WL 2779466, at *7–8 (D.N.J. June 27, 2017); *Kranson v. Valley Crest Nursing Home*, 755 F.2d 46, 51 (3d Cir. 1985).

Here, it is undisputed that Hoboken "has a written Affirmative Action/Anti-Harassment Policy" that provides: "All employees are entitled to work in an environment free from all forms of unlawful discrimination and conduct which can be considered harassing, coercive or disruptive, including sexual harassment. Discrimination and harassment in the workplace will not be tolerated

by the City." (SAC ¶ 315). Additionally, the policy also makes it a violation "to take reprisals against any person because he/she has filed a complaint, acted as a witness or provided assistance in the investigation." (*Id.* ¶ 65).

Plaintiff asserts that Hoboken has a custom or practice of using this affirmative action policy to discipline complainers, apparently because the same individuals that make up the Affirmative Action Panel also oversee discipline. (*See* SAC ¶¶ 66 & 318–21; D.E. No. 114 at 37–38). In support, Plaintiff blindly asserts that "numerous . . . Hoboken employees were unfairly disciplined after and because they complained of discrimination." (SAC ¶ 325). But of the listed names, Plaintiff provides allegations only regarding two: Kim Alston and Catherine Stewart. (*See generally id.*). And the allegations surrounding these individuals do not support Plaintiff's claim.

For instance, the SAC does not state that Kim Alston was discriminated against or harassed on the basis of her race or sexual orientation, or that she filed a complaint with the Affirmative Action Panel, or even that she spoke with the members of the panel. Rather, the SAC states that Alston spoke to Mojica about her fear that Plaintiff was going to be fired. (*Id.* ¶¶ 139–48). Thus, these allegations do not support Plaintiff's assertions of the existence of a custom or policy of retaliating against employees who attempt to use the affirmative action policy, that Hoboken had any sort of knowledge of said custom, or that any official with authority ratified any such unconstitutional action or custom.

With respect to Catherine Stewart, while the SAC asserts that she filed a suit against Hoboken and Mojica for alleged discrimination and harassment (*id.* ¶ 35), the SAC does not state or even create the inference that Stewart was harassed or discriminated on the basis of her race or sexual orientation, that she filed a complaint with the Affirmative Action Panel, or even that she was retaliated against for complaining of discrimination and harassment in the workplace. (*See*

*generally id.*).  Consequently, Plaintiff has failed to plead sufficient facts to allow the Court to reasonably infer that Hoboken has a custom or practice "that is so well-settled and permanent as virtually to constitute law." *See Bielevicz*, 915 F.2d at 850.

Further, to the extent Plaintiff attempts to assert that the alleged policy exists by virtue of an official act, the SAC does not provide a sufficient factual basis for such a claim either, since the SAC does not make any allegations supporting the inference that there was an official act of a final decision-maker that caused a constitutional violation.  *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 366-67 (D.N.J. 2000); *Longford v. City of Atl. City*, 235 F.3d 845, 846-50 (3d Cir. 2000).

Similarly, Count Ten fails to state a basis for finding *Monell* liability under the failure-to-train theory.  *Monell* liability based on a municipality's failure to train or supervise employees "requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks omitted).  "Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation." *Id.* (internal quotation marks omitted).

"Ordinarily, '[a] pattern of similar constitutional violations by untrained employees' is necessary 'to demonstrate deliberate indifference for purposes of failure to train.'" *Thomas*, 749 F.3d at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  This is because "[p]olicymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger municipal liability.'" *Connick*, 563 U.S. at 62 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407

(1997)). That is, without notice "that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

In the absence of a pattern, deliberate indifference for purposes of a failure-to-train claim may be established by a single incident in the "rare" circumstance that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under Section 1983 without proof of a pre-existing pattern of violations. *Id.* at 63. For a single incident to establish deliberate indifference, a plaintiff must allege "that (1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999) (citations and footnote omitted).

Here, Plaintiff asserts that "Hoboken failed to properly train its employees and Affirmative Action Officers, defendants Kimberley Wilson and Nita Raval." (SAC ¶ 343). But the SAC fails to provide any *factual* allegations that would support this assertion. Indeed, Plaintiff does not even attempt to "identify specific deficiencies in any training program to which [Hoboken] might have responded." *See Ianuale v. Borough of Keyport*, No. 16-9147, 2017 WL 3503332, at *3 (D.N.J. Aug. 16, 2017). Instead, Plaintiff merely provides conclusory allegations that "Hoboken was made aware of each lawsuit and settlement alleging discrimination and retaliation of which there have been many," and that "Hoboken did not implement training or other means of eliminating unlawful discrimination." (*Id.* ¶¶ 344–48). The remaining allegations merely recite the legal standard for a failure to train claim without any factual support. (S*ee id.* ¶¶ 349–55). In effect, the SAC adds nothing materially different from the dismissed Fifth Amended Complaint; Plaintiff simply fails

to address the deficiencies identified by the Court's prior Opinion. (*See generally id.*; D.E. No. 99 at 20–21). Accordingly, the Court dismisses Counts Nine and Ten *with prejudice*.

### B.    Section 1985 Claim – Count Eleven

Count Eleven alleges that all Defendants engaged in a civil conspiracy to retaliate against Plaintiff and deprive him of his constitutional rights. (SAC ¶ 357). To sufficiently plead a Section 1985(3) claim (i.e., a claim based on depriving persons of rights or privileges), a plaintiff must allege facts showing: "(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). "The factual allegations supporting the conspiracy claim may not be generalized or conclusory." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 484 (D.N.J. 2009); *see also Schlichten v. Cnty. of Northampton*, 279 F. App'x. 176, 179 (3d Cir. 2008) (requiring a conspiracy be pled with specificity). Thus, mere conclusory allegations that a conspiracy exists will not survive a motion to dismiss. *Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 604–05 (D.N.J. 2002). Instead, "a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *Ivan*, 595 F. Supp. 2d at 484 (internal quotation marks omitted).

The SAC does not address the deficiencies outlined by the Court's prior Opinion. (*See* D.E. No. 99 at 14–16). Previously, the Court found that the Fifth Amended Complaint was deficient because it did not provide any factual allegation to show that any alleged conspiracy "was motivated by any discriminatory animus." (D.E. No. 99 at 15). Additionally, Plaintiff did not set forth allegations sufficiently showing the existence of a conspiracy or that there was a meeting of

the minds among the Defendants. (*Id.* at 15–16).

While the SAC now asserts that the period of the conspiracy ran from "April 2014" to "November 2014" (SAC ¶¶ 358–59), Plaintiff still fails to allege any specific facts supporting the inference that all Defendants had an understanding or agreement to conspire against Plaintiff, or that any such conspiracy was motivated by a discriminatory animus. *See Morton*, 618 F. App'x at 142–43. Plaintiff only describes what each defendant allegedly did (SAC ¶¶ 363–69), and then asserts that "Defendants John Morgan, Hector Mojica, Quentin Wiest, Mellissa Longo, Alysia Walsh (Proko), Jon Tooke, Kimberley Wilson, Nita Raval, Dawn Zimmer and Michael Korman had knowledge of each other defendant['s] actions" (*id.* ¶ 370) and "had knowledge of the ultimate aim of the conspiracy, *i.e.*, to terminate [P]laintiff's employment" (*id.* ¶ 371). But again, "factual allegations supporting the conspiracy claim may not be generalized or conclusory" (D.E. No. 99 at 16), and mere conclusory allegations that "Defendants engaged in a conspiracy" (SAC ¶ 357) or that Defendants "had knowledge of each other defendant['s] actions" (*id.* ¶ 370) will not survive a motion to dismiss. *See Ivan*, 595 F. Supp. 2d at 484; *Harley*, 2017 WL 2779466, at *11.

And because Plaintiff has repeatedly ignored the Court's instructions that a Section 1985 claim has a "heightened pleading requirement" (*see* D.E. No. 99 at 16; D.E. No. 61 at 59 & 73), the Court sees no reason to permit any further amendment. Accordingly, Count Eleven is dismissed *with prejudice*.

### C.    Remaining State Law Claims

Plaintiffs' remaining NJLAD, NJCRA, and breach of the covenant of good faith and fair dealing claims are predicated on state law. The basis for the Court's jurisdiction over these claims is 28 U.S.C. § 1367. Although Section 1367 permits federal courts to exercise jurisdiction over state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in

a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Washington v. Specialty Risk Servs.*, No. 12-1393, 2012 WL 3528051, at *2 (D.N.J. Aug. 15, 2012) (noting that "[w]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so") (alterations in original) (quoting *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000)).

The Court finds that none of the factors favor retaining jurisdiction, since the Court has had minimal involvement with these state law claims. (*See* D.E. No. 99 at 22 ("Until Plaintiff establishes federal-question jurisdiction through surviving federal claims, the Court need not address Plaintiff's state claims.")). Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and instead remands the same to the Superior Court of New Jersey, Law Division, Hudson County. *See, e.g.*, *Fesco v. Darby Dev., LLC*, No. 13-7129, 2014 WL 3556510, at *4 (D.N.J. July 18, 2014); *Washington*, 2012 WL 3528051, at *2.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Defendants' motion to dismiss. Plaintiff's federal claims (Counts Six to Eleven) are dismissed *with prejudice*. Plaintiff's remaining state law claims asserted by Counts One to Five and Twelve to Thirteen are REMANDED. An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**